UNITED STATES, Appellee

v.

REGINALD WILLIAM DOYLE, Aviation Structural Mechanic Airman, U. S. Navy, Appellant

1 USCMA 545, 4 CMR 137

LT. Henry B. Nesbitt, USNR, for Appellant.
CAPT. Wesley C. Blake, USMC, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner, Reginald W. Doyle, Aviation Structural Mechanic Airman, was tried by Navy summary court-martial on May 24, 1951, for the offenses of unlawfully possessing the clothing of another and larceny, violations of the Articles for the Government of the Navy, Article 8(20) and 14(8), 34 USC § 1200, respectively. He was found guilty and sentenced to a bad-conduct discharge. Navy reviewing authorities have upheld the findings and sentence, and we granted the petition for review which raises issues concerning the introduction of a pre-trial confession, search and seizure, and use of hearsay testimony.

It is urged first that the conviction for unlawfully possessing clothing of another cannot stand, since the clothing introduced in evidence was obtained from petitioner's locker by unlawful means. The facts in relation to the search are as follows: On May 8, 1951, Seaman Lang reported to the chief master-at-arms that a pair of his shoes was missing and that he had seen them in petitioner's locker. On the same day, petitioner was arrested as a result of another incident, and was placed under guard. Later in the day, the master-at-arms took petitioner and Lang to the former's locker, which was opened by petitioner. The evidence is conflicting as to whether petitioner voluntarily opened his locker or whether he did so as a result of orders given by the master-at-arms. Inspection of the locker disclosed numerous items of clothing belonging to other persons, including the shoes owned by Lang.

The Fourth Amendment to the Constitution provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." The Federal courts have enforced this constitutional protection in criminal trials by excluding from evidence the products of searches prohibited by this Amendment. Weeks v. United States, 232 US 383, 58 L ed 652, 34 S Ct 341. The armed services had adopted a similar rule, even prior to the enactment of the Uniform Code of Military Justice, 50 USC §§ 551–736. Manual for Courts-Martial, U. S. Army, 1949, paragraph 183; CMO 10, 1922, page 12. It will be noted, however, that both the Federal and the military rules exclude from evidence only the products of "unlawful" searches. The term "unlawful" finds its basis in the constitutional prohibition of "unreasonable" searches. Carroll v. United States, 267 US 132, 69 L ed 543, 45 S Ct 280, 39 ALR 790. In applying the rule of exclusion, the fundamental inquiry must, therefore, be in every instance whether the search involved is unreasonable. This test, by its very nature, makes difficult the formulation of general principles—too much depends on the circumstances of the individual case. Go-Bart Co. v. United States, 282 US 344, 75 L ed 374, 51 S Ct 153; Matthews v. Correa, 135 F2d 534 (CA2nd Cir). However, there are some fundamental concepts—recognized by both civilian and military courts—which are applicable in the area of military searches.

There has long existed in the services a rule to the effect that a military commanding officer has the power to search military property within his jurisdiction. United States v. Kemerer, 28 BR 393; Dig Op JAG 1912–1940,

---

Section 395 (27) ; CMO 11, 1929, page 5 ; CMO 11, 1929, page 11 ; United States v. Worley, 3 CMR (AF) 424. The basis for this rule of discretion lies in the reason that, since such an officer has been vested with unusual responsibilities in regard to personnel, property, and material, it is necessary that he be given commensurate power to fulfill that responsibility. This rule and the reasons for it have been expressly recognized and approved by the Federal courts. United States v. Best, 76 F Supp 857; Richardson v. Zuppann, 81 F Supp 809. It is unnecessary, in this connection, to spell out the obvious policy considerations which require a differentiation between the power of a commanding officer over military property and the power of a police officer to invade a citizen's privacy. That there may be limitations upon the former's power, we do not doubt. Insofar as the power bears on criminal prosecutions, both trial courts and appellate forums are available to insure that the commanding officer does not abuse his discretion to the extent that the rights of an individual are unduly impaired.

Implied in the power of a commanding officer to order a search of military property is necessarily included the right to delegate this power. Although we find no express naval law either affirming or denying this right of delegation, it has been expressly recognized by the other services. United States v. Edwards, 3 CMR (AF) 540; United States v. Darby, 2 CMR (AF) 200. It is spelled out in the Manual for Courts-Martial, United States, 1951, paragraph 152, as follows:

"A search of property which is owned or controlled by the United States and is under the control of an armed force, or of property which is located within a military installation or in a foreign country or in occupied territory and is owned, used, or occupied by persons subject to military law or to the law of war, which search has been authorized by a commanding officer (including an officer in charge) having jurisdiction over the place where the property is situated or, if the property is in a foreign country or in occupied territory, over personnel subject to military law or to the law of war in the place where the property is situated. The commanding officer may delegate the general authority to order searches to persons of his command. This example of authorized searches is not intended to preclude the legality of searches made by military personnel in the areas outlined above when made in accordance with military custom."

It is appropriate that the disciplinary representative of the commanding officer should normally be the person to which this function is entrusted. In the Navy, this is, traditionally, the master-at-arms. Navy regulations provide as follows:

"In ships, and in other commands as appropriate, there shall be assigned under the executive officer a chief master-at-arms, and such other masters-at-arms as may be required as his assistants, for the maintenance of good order and discipline." U. S. Navy Regulations, 1948, section 0806.

In the absence of an express delegation, however, we hesitate to attribute to such a person the discretionary powers to search which are vested in the commanding officer. It is distinctly arguable that his power to search military property should be limited by a requirement that reasonable cause therefor be shown. We would have serious doubts concerning the propriety, in the absence of express authorization, of allowing such a person to make general exploratory searches without a showing of good cause.

It is apparent, however, that we are not here confronted with the necessity of deciding whether the inherent search powers of the master-at-arms are concurrent with those of the commanding officer. Here, an eye-witness had informed the master-at-arms that petitioner had in his possession the clothing of another. He, therefore, had reasonable and probable cause to believe that an offense had been committed by petitioner. See Brinegar v. United States, 338 US 160, 175, 93 L ed 1879, 1890, 69 S Ct 1302; Gilliam v. United States,

548

189 F2d 321 (CA6th Cir) ; Pearson v. United States, 150 F2d 219 (CA10th Cir). Inability to take direct and prompt action in such a situation would seriously impair the performance of a master-at-arms' duties and responsibilities in regard to enforcement of laws and regulations and, under other circumstances, the protection of government property.

Applying the general principles discussed above to the circumstances of this case, we therefore conclude that the action of the master-at-arms in searching petitioner's locker was, according to existing military and naval law, reasonable. There being no unreasonable search, no error was committed by receiving the clothing in evidence at the trial.

The second issue in relation to a search and seizure arose in connection with the second charge, involving the theft of a master-at-arms █ badge. The prosecution offered in evidence a master-at-arms badge which was found in petitioner's car. Defense objected on the ground of illegal search and seizure, and the following facts developed: Petitioner was suspected by the civilian police of having stolen some automobile seat covers. On May 9, 1951, two civilian detectives and a policeman obtained a warrant to search petitioner's car, and then proceeded to the Naval Station for the purpose of making the search. Both petitioner and the station master-at-arms were present during the search, which occurred outside the station, and petitioner offered no objection. During the search, a master-at-arms badge was discovered in the car. It was the introduction of this badge in evidence to which defense objected on the ground that it was the product of an illegal search and seizure. The objection was sustained and the badge was excluded. However, both the civilian police and the master-at-arms testified that the badge was found in petitioner's possession and no effort was made to exclude this testimony. It was before the court, and undoubtedly considered by them in assessing petitioner's guilt.

An unusual situation is presented here since the testimony relating to the discovery of the badge was given in the presence of the court and was not labeled as being part of a collateral inquiry as to the lawful nature of the search. Ordinarily, if evidence is excluded, and incriminating testimony elicited during the collateral inquiry, such testimony should not be placed before the court for consideration. However, the fact remains that the incriminating testimony was not here excluded. If the ruling as to the legality of the search was correct, then it may well have been error for the court to have considered this testimony. It is our conclusion that the ruling of the president of the court that this evidence was improperly seized was incorrect.

The Federal courts have frequently condemned general exploratory searches, where the result of such a search is to produce unexpected products of crime. United States v. Rabinowitz, 339 US 56, 94 L ed 653, 70 S Ct 430; Bushouse v. United States, 67 F2d 843, (CA6th Cir). However, if the search is lawful, officers may seize items relatively apparent, even though the original purpose of the search did not relate to those items. Harris v. United States, 331 US 145, 91 L ed 1399, 67 S Ct 1098. Here, the civilian authorities searching the car had procured a warrant, authorizing them to search petitioner's car. During this search, the master-at-arms badge was found in plain view—pinned to the sun-visor inside the car. Under the rule set forth in Harris v. United States, supra, this evidence of crime was legally seized and should have been allowed in evidence at the trial. This being so, we cannot hold that receiving the testimony not objected to, concerning the presence of the badge in petitioner's car, was error. Under our view of the situation, this testimony was proper. Accordingly, petitioner cannot now complain that it should not have been considered.

The final issue raised concerns proof of an oral confession given by petitioner to the chief master-at-arms █ in relation to the theft of the badge. The record contains the following testimony by the master-at-arms:

"Q. I wish you to recall the morning of the ninth of May. That was the day after you found exhibits one, two, three, and four in the accused's locker. Did you see the accused on that morning?

A. Yes, Sir.

Q. Did you talk with him in person?

A. Yes, Sir.

Q. Would you tell us in your own words about the conversation?

A. It was in my office. I asked Doyle in these words, I said, 'Son, whatever possessed you to take such an article as a MAA badge whereby you had no use for the same?' And I quote his words which I still remember very clearly. He said, 'I saw it laying there so I took it' and I assume that it must have been from my desk."

"Cross-examined by the accused: [sic]

Q. Chief, at the time Doyle was in your office and made that statement, was anyone else present?

A. I believe there was, in fact, I know there was.

Q. Will you tell the court who?

A. Klingensmith.

Q. Anyone else beside Klingensmith?

A. Not to my knowledge."

This testimony does not clearly establish the voluntary nature of the confession, although the circumstances disclosed by the brief narration of the master-at-arms are inconsistent with the use of duress. Paragraph 174 of Naval Courts and Boards, 1937, provides that "It must be affirmatively shown that the confession was entirely voluntary on the part of the accused." This may be interpreted as requiring, as a condition precedent to the admission of the confession in evidence, proof of voluntariness. However, even assuming that there was here a failure to comply with the procedural requirements of Paragraph 174, we do not believe that this resulted in any substantial prejudice to the accused. We are not here called upon to decide whether the improper reception in evidence of

an involuntary confession will vitiate the proceedings regardless of other compelling evidence of guilt. Here, there is no indication that the confession was actually involuntary. The policy considerations which have led some courts to reverse convictions solely because of the use of involuntary confessions in evidence has no application here. We are aware of no similar policy consideration which requires that a failure to follow the prescribed procedure in introducing confessions should be, per se, fatal to the proceedings. In such a case, it is appropriate that we should be bound by the rule which prohibits reversal for error unless it is substantially prejudicial to the accused. Here, there is other and convincing proof of guilt. It was established that the master-at-arms badge was missing under circumstances indicating that it was stolen, and that petitioner was in the office when it was taken. The badge was later found in his possession.

We have examined carefully other errors raised by petitioner, and have considered the entire record. The latter disclosed some improper uses of hearsay testimony. In several instances, we think the president unduly restricted the scope of defense cross-examination. We have weighed these errors carefully against other and proper evidence of guilt. The compelling nature of the prosecution case, aside from that testimony affected by the errors noted above, persuades us that it is neither necessary nor desirable to set aside this conviction. We are reminded that an appellate court is not and should not be concerned with emphasizing procedural errors to the point where an otherwise guilty defendant is permitted to escape the penalties properly exacted by society for his offenses. While not condoning the departures from proper rules of evidence which this record discloses, it is our considered judgment that they were not substantially prejudicial to the accused.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.