UNITED STATES, Appellee

v.

RAYMOND SWANSON, Private E–1, U. S. Army, Appellant

3 USCMA 671, 14 CMR 89

No. 2570

Decided January 29, 1954.

 

MAJ Edwin Doran, U. S. Army, and 1ST LT Justin L. Vigdor, U. S. Army, for Appellant.

LT COL Paul J. Leahy, U. S. Army, and MAJ Richard H. Love, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial at Fort Sill, Oklahoma, convicted the accused of larceny of $73.00 from a fellow-soldier,[1] and sentenced him to dishonorable discharge, total forfeitures and confinement at hard labor for two years. The convening authority approved, and the board of review affirmed the findings and sentence. We granted the accused's petition for review to determine the legality of the search and seizure which produced the principal evidence against him.

The essential facts, upon which the parties are in substantial agreement, are as follows: While Private Schweich was with his organization, Battery C, First Field Artillery Training Battalion, in bivouac at Fort Sill, Oklahoma, his wallet, containing $73.00, was stolen from him. On the morning following the theft, the wallet was found in the area, and returned to him. The money,

however, was missing from it. These facts were reported to Master Sergeant Auwen, the Field First Sergeant, who immediately ordered a formation. At the formation he announced that if the person responsible for the theft would throw the money to the ground as the group dispersed, the matter would not be pursued further. When this failed to produce the missing money, he ordered an inspection of the men. During this inspection, the missing money was found in the accused's helmet liner. While these events were occurring, neither the battery commander nor any of the battery officers were present, and were not expected to return for an appreciable length of time. When the battery commander returned to the area, he questioned the accused and obtained a complete acknowledgment of guilt.

At the trial, the defense objected to the introduction of evidence obtained as a result of the search, asserting that the search was illegal, inasmuch as

[1] Article 121, Uniform Code of Military Justice, 50 USC § 715

the First Sergeant had no authority to order it. Introduction of the accused's confession was opposed upon the ground that it was occasioned by the illegal search and seizure. By these objections the accused's right to have the question considered upon appeal was preserved. United States v. Dupree, 1 USCMA 665, 5 CMR 93.

The Fourth Amendment to the Constitution recognizes and protects the right to security from unreasonable searches and seizures. To preserve this right, the rules governing proceedings before Federal courts and courts-martial require the exclusion of evidence secured in violation of this Amendment. Weeks v. United States, 232 US 383, 58 L ed 652, 34 S Ct 341; United States v. Doyle, 1 USCMA 545, 4 CMR 137; United States v. Dupree, supra. While no fixed rule for determining reasonableness can be formulated, the authorities agree that an illegal search falls within the Constitutional proscription. Carroll v. United States, 267 US 132, 69 L ed 543, 45 S Ct 280; United States v. Doyle, supra. Generally speaking, each case must be decided on its own facts and circumstances. Go-Bart Importing Co. v. United States, 282 US 344, 75 L ed 374, 51 S Ct 153; United States v. Thompson, 113 F2d 643 (CA 7th Cir) (1940).

In support of the position that the search conducted in the instant case was lawful, appellate Government counsel rely on the following provision of paragraph 152, Manual for Courts-Martial, United States, 1951:

"The following searches are among those which are lawful:

• • • • •

"A search under circumstances demanding immediate action to prevent the removal or disposal of property believed on reasonable grounds to be criminal goods.

• • • • •

"A search of property which is owned or controlled by the United States and is under the control of an armed force, or of property which is located within a military installa-

tion . . . which search has been authorized by a commanding officer (including an officer in charge) having jurisdiction over the place where the property is situated. . . . The commanding officer may delegate the general authority to order searches to persons of his command. This example of authorized searches is not intended to preclude the legality of searches made by military personnel in the areas outlined above when made in accordance with military custom."

The defense, however, argues that the circumstances here did not require immediate action. Moreover, it contends, since the search was ordered by one who lacked the authority of a commanding officer, it was illegal, and its products should have been excluded upon objection.

In the instant case, money had in fact been stolen from a member of an organization in bivouac. No other organization was in the area. Therefore, an inference that the theft was committed by some member of that organization was clear. An opportunity to return the money without detection and with complete impunity was offered and refused. The thief was then aware that further action to discover the fruits of the crime would probably follow. Concealing his connection with the offense was his primary objective, and this could be accomplished only by concealing the money. Delay afforded him greater opportunity to effectuate his purpose, and necessarily worked to the disadvantage of the victim, as well as to the prejudice of discipline. If successful action was to be taken at all, it had to be taken immediately. A search conducted in the manner described in the evidence was the only course reasonably open.

Left for determination then, is this question: Who may order a search shown to be necessary? As indicated in United States v. Doyle, supra, this depends upon the circumstances giving rise to the search, and the functions ordinarily exercised by the person who ordered it. Under normal circumstances, a First Sergeant has immediate charge of the enlisted men of his organ-

ization.[2] In the supervision of these men, he has been described as an assistant unit commander.[3] Indeed, at least one authority has suggested that in the absence of commissioned officers, he is in command.[4] Certainly in the absence of all unit officers, the First Sergeant in this case was charged with the responsibility of protecting property, maintaining discipline, and preventing disorders or crimes within the organization. While we need not determine whether the general authority of the commanding officer to order searches of Government property descended upon the First Sergeant under these circumstances, we do hold that he had authority to order a search when immediate action was demanded to prevent the removal of criminal goods.

Accordingly, the search was authorized by military law, and its products were admissible in evidence.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.

---

[2] Dictionary of US Army Terms, TM 20-205, page 113.

[3] Handbook and Manual for Non-Coms, Combat Forces Press, 1952, pp 18-19.

[4] The Non-Coms Guide, Military Service Publishing Co., page 28.