UNITED STATES, Appellant

v.

ROBERT L. DAVIS, Private First Class, U. S. Army, Appellee

4 USCMA 577, 16 CMR 151

LT COL William R. Ward, U. S. Army, and MAJ Irvin M. Kent, U. S. Army, for Appellant.
CAPT William C. Irby, Jr., U. S. Army, and 1ST LT Robert C. Taylor, U. S. Army, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A board of review reversed the accused's conviction of larceny on the ground that certain evidence admitted at the trial was obtained by an unlawful search. The Judge Advocate General filed a certificate in this Court asking review of the legal correctness of this determination.

On the morning of July 1, 1953, two enlisted men, of the 54th Heavy Truck Company, awakened to find that their money had been stolen. Both occupied the same hut, which was also tenanted by the accused. A report was promptly made to the First Sergeant. He ordered all occupants of the hut to report to the orderly room, and he directed the Charge of Quarters to search the hut for the missing money. No officers were present and the Commanding Officer was then on duty as Battalion Officer of the Day. The First Sergeant had not been given blanket authority to order a search, nor had he been authorized to make this particular search. However, in the absence of the Commanding Officer, the First Sergeant was in charge of the company.

The search uncovered a sum of money which approximated the amount and bill denominations of that stolen. The hiding place for this money was the space between a photograph of the accused's wife and the backing of the frame which contained the picture. Later, after he was warned of his rights under Article 31, Uniform Code of Military Justice, 50 USC § 602, the accused made an oral confession to a Provost Marshal investigator. Defense counsel did not object to the testimony about the discovery of the money, but he did object to the admission in evidence of the money and the confession, on the ground that they were obtained as a result of an illegal search. Each objection was overruled.

A serious question of waiver is raised by the failure of defense counsel to object to the testimony of the search, although he attempted to exclude the physical evidence obtained by reason of the search. See: United States v. Dupree, 1 USCMA 665, 5 CMR 93; United States v. Doyle, 1 USCMA 545, 4 CMR 137. However, we assume, for the purposes of this case, that the objections actually made preserved the whole issue for appellate review.

In United States v. Swanson, 3 USCMA 671, 14 CMR 89, we held that, in the absence of all unit officers, the First Sergeant has authority to order a search when immediate action is demanded to prevent removal of the criminal goods. We believe that the facts of this case call for the application of the above rule.

Money is, ordinarily, easy to conceal and difficult to identify. See: United States v. Wilcher, 4 USCMA 215, 15 CMR 215. The thefts became known before the reveille assembly. If the thief was an occupant of the hut in which the losses occurred, it was quite probable that he had not yet had an opportunity to conceal completely the stolen property. This probability would be even greater, if, as the First Sergeant may well have believed, the thefts were committed just before their dis-

covery. Under the circumstances, an immediate search would prevent removal or more effective concealment. While, as suggested by the board of review, the same result might perhaps have been accomplished had the First Sergeant isolated the occupants of the huts, and then obtained express authority from the commanding officer, the possibility of other courses of action does not destroy the reasonableness or necessity of that which was actually taken. Accordingly, we hold that the search was legal.

The decision of the board of review is reversed. The case is returned to The Judge Advocate General of the Army for action consistent with this opinion.

Judge LATIMER concurs in the result.

BROSMAN, Judge (dissenting):

I dissent from the views of the author of the principal opinion here and from the result reached by my brothers.

## II

A board of review in the office of The Judge Advocate General, United States Army, set aside the present conviction on the ground that certain evidence admitted at the trial had been secured by means of an unlawful search. The majority, in turn, has reversed this decision of the board. In my opinion, the board was eminently correct in the result it reached and should be affirmed. This brief memorandum is prepared for the purpose of recording my notions in the premises—and but little attempt will be made to defend them.

It would seem to be possible logically to reach the conclusion to which my brothers have come on the basis of any one of three approaches. (1) In the first place, it may be said that because command of a company descends to the first sergeant in the absence of the commanding officer—or perhaps only in that of all of the unit's commissioned personnel—for *some* purposes, it must be deemed to devolve on him for *all*, or at least for enough to include the present one. Thus, in this situation the first sergeant *is* a "commanding officer"

within the meaning of the Manual language mentioned hereafter, and may order or effect a lawful search. (2) Secondly, it is arguable that—although a first sergeant as such may not possess authority to order a legal search in the absence of the commanding officer under every circumstance—he may do so when, as the Chief Judge says, "immediate action is demanded to prevent removal of the criminal goods." (3) Finally—and conceding arguendo that the search here was illegal—it may be urged that the conduct of the defense at trial constituted a waiver of the accused's right to have the seized property excluded from the evidence. As I understand it, the principal opinion passes over the first and third approaches without decision, and relies wholly on the second. I am unwilling to affirm on the basis of any of the three.

## III

Although not utilized by Judge Quinn, I shall consider at the outset the first logically possible ratio. The Manual for Courts-Martial, United States, 1951, paragraph 152, enumerates—in what must be regarded as a nonexclusive list—five situations in which searches are to be deemed lawful. Only the last of these appears to be relevant at this point, and—without entering into unnecessary detail—it has to do with a "search [which] has been authorized by a commanding officer . . . having jurisdiction over the place where the property is situated." The provision goes on to permit the delegation of this power "to persons of his command"—and I assume that this authorization could properly take the form of either a special or a general delegation.

I take it that the company commander of the accused soldier here would constitute a "commanding officer" within the meaning of the quoted language, and thus that the former could lawfully have authorized the search with which we are concerned, or could have delegated this authority to his first sergeant —either generally or specially. However, the commander was unaware of the particular action until it was completed, and thus could not have author-

579

ized it himself. Nor does the record reflect the existence of any sort of delegation to the noncommissioned officer who did conduct it. Therefore, under the present head we must conclude that the search was illegal unless—when he made it—the first sergeant was "a commanding officer" within the intendment of Manual phrasing.

Initially, it is to be observed that the instant search was authorized and conducted by a *noncommissioned* officer. The Uniform Code in Article 1, 50 USC § 551—its definition Article—defines the term "officer" for the purposes of military justice to mean "a *commissioned* officer including a *commissioned* warrant officer." (Emphasis supplied.) Thus, in terms of narrow definition, the words "commanding officer," as used in paragraph 152, supra, must be read "commanding [*commissioned*] officer."

But, apart from measurement by this sort of yardstick, I cannot believe that the Manual meant—in the absence of an exercise by the commanding officer of his discretionary power to delegate—to surrender to the mercies of noncommissioned personnel a virtually limitless authority to search the property of persons under their control. Given the sensitive area involved, this is moving too far down along the chain of command for my simple tastes—and before joining in the procession I shall require a clearer mandate than I have. Some first sergeants, I must concede, may be more balanced and responsible than certain of their commissioned associates. However, the traditional assumption—in both military law and life—is that the converse is the more usual situation. Special responsibilities, as well as special privileges, are placed on the commissioned officer—and a particular standard of conduct must be maintained by him. See, e.g., Article 133 of the Code, 50 USC § 727. I am unwilling in this area to disregard the inescapable differences—and reasons for difference—between commissioned and noncommissioned personnel. And if we do not halt before we reach the first sergeant, what is to be our stopping place? What of an acting first sergeant, a field first sergeant, an acting field first sergeant, a duty sergeant, a

charge of quarters—and so on? Incidentally I am aware of no sort of custom of the service at variance with anything which has been said herein—nor has any been called to my attention.

Now for the theory adopted in the principal opinion. The third of the enumerated legal searches mentioned in an earlier paragraph hereof relates to one made "under circumstances demanding immediate action to prevent the removal or disposal of property believed on reasonable grounds to be criminal goods." I certainly can have no objection to this—and regardless of whether, in a proper case, the person effecting the search is a commissioned or a noncommissioned officer. See United States v. Swanson, 3 USCMA 671, 14 CMR 89.

According to the Chief Judge, we have here a Swanson case. I shall not burden these notes with a detailed comparison of the two situations—but I invite the reader to make one. Suffice it to say that there the unit concerned was on bivouac far removed from officer personnel, and in addition there was real cause to believe that prompt action was necessary to forestall disposal of the stolen property. Neither of these conditions exists here in any genuine sense. The company commander with whom we are concerned was at the time serving as battalion officer of the day; could have been located with relative ease; and under normal circumstances could not permissibly have strayed far from the very area of the company. Moreover, as the board of review pointed out, and the author of the principal opinion concedes, other means for dealing with the problem—short of search and with equal effectiveness—were readily available to the first sergeant here. For one, he could have isolated the hut's occupants and obtained telephonic authorization for a search. Judge Quinn concludes, however, that "the possibility of other courses of action does not destroy the reasonableness or necessity of that which was actually taken." We did, indeed, say something like this in the Rhodes case. See United States v. Rhodes, 3 USCMA 73, 11 CMR 73. However, it will be noted that there we had before us a search conducted in

580

accordance with a recognized custom of the service. In addition, and for whatever it may be worth, the searcher was a commissioned officer—which may account for the presence of the differing service usage in the matter.

In short, I cannot believe that there is to be found in the present case that compelling need for prompt action requisite to justify a *noncommissioned* officer in effecting a search not authorized by his superiors nor warranted by a custom of the service. In my view, the necessity in a situation like the present must be a distinctly compelling one. To my mind, too, we went as far in the Swanson case as we should ever go. If we adhere to the reasoning of the principal opinion in this case, I do not see how we can hereafter consistently deny to a noncommissioned officer the power to search in any case in which the stolen property is money or some other small article of value.

Before concluding, brief reference should be made to the possible application of the doctrine of ■■■■■■ waiver. See United States v. Dupree, 1 USCMA 665, 5 CMR 93. In the case at bar the defense counsel omitted to object specifically to testimonial evidence concerning the search, although he *did* most earnestly seek to exclude from evidence the fruits thereof. There can have been no informed election here. At most there was a tactical slip—and this is no game we are playing. This certainly constitutes no waiver in my book, nor can I believe that it will be found indexed in those of my brothers. Therefore, I would be willing to *hold* what at least one of them has *assumed* on the subject of waiver.

## IV

In the past we have gone further in the area of search and seizure than some of our critics would have preferred. See comment, Search and Seizure Under The Uniform Code of Military Justice, 101 U of Pa L Rev 851. And, speaking for myself, I have done this deliberately because I have felt that the problem must be considered realistically against a background of the necessities of the military situation. But—as I have said on similar occasions in the past—I am unwilling to ride a good horse to death. If I accept what my brothers have to offer here, literally I do not know where I can stop. Consequently, I would affirm the decision of the board of review and answer The Judge Advocate General's certified question appropriately.