**UNITED STATES, Appellee,**

v.

**Clayton C. CARTER, Sergeant, U. S. Air Force, Appellant.**

**No. 30,181.**

U. S. Court of Military Appeals.

Feb. 20, 1976.

*Major John A. Cutts III* argued the cause for Appellant, Accused. With him on the brief were *Colonel Jerry E. Conner* and *Colonel William E. Cordingly.*

*Captain Frederick P. Waite* argued the cause for Appellee, United States. With him on the brief was *Colonel C. F. Bennett.*

## OPINION OF THE COURT

FLETCHER, Chief Judge:

Upon observing a "full" paper bag which had been stapled closed and which was similar in appearance to an unstapled bag from which he previously had seen the appellant remove a sandwich, Sergeant Davis removed the bag from the top shelf of a coatrack in his office in the Aero Mail Terminal to examine its contents. When he discovered what appeared to be stolen mail matter, Sergeant Davis resealed the bag and immediately contacted his supervisor who, in turn, requested the assistance of the Air Force Office of Special Investigations. Special Agent Wood subsequently instructed Sergeant Davis to await the appellant's departure from the mail terminal before attempting to "check" the bag. As the appellant exited from the building, Sergeant Davis confronted him and asked to examine the contents of the stapled bag he was carrying. The sergeant testified that the appellant "just started pulling out the things and telling me what he had in it. He said he had a letter from his wife or something, and he had a calendar, and last he said, 'I have a package that doesn't belong to me.'"

The fruits of the sergeant's search together with the appellant's incriminating statement paved the way for a series of subsequent interrogations which yielded further admissions as well as the discovery of additional damaging evidence in a search of the appellant's residence during the followup investigation conducted by Special Agent Wood. Appellant now contends that the trial judge erred by sanctioning Sergeant Davis' initial examination of the stapled bag and, in addition, urges that the subsequently discovered evidence including his admissions should have been excluded by the trial judge as fruit of the poisonous tree.

■ Challenging appellant's initial contention, the Government relies upon *United States v. Torres*, 22 U.S.C.M.A. 96, 46 C.M.R. 96 (1973), in asserting that Sergeant Davis' search of the paper bag he removed from the coatrack was both reasonable and properly authorized. In *Torres*, the commanding officer of a postal company noticed a package with the accused's return address and no postage lying on a table in the work area of the post office in violation of pertinent regulations. The commanding officer ordered the accused to open the package, and the contents later were proven to be property stolen from the mails.

We first observed in *Torres* that the Fourth Amendment bars only unreasonable searches and seizures. *United States v. Maglito*, 20 U.S.C.M.A. 456, 43 C.M.R. 296 (1971); *United States v. Kazmierczak*, 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967). Because it was established that Torres' package was not lawfully in the postal facility, we concluded that he had no "reasonable expectation of freedom from governmental intrusion." *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). *See also Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Additionally, we were satisfied that the officer who ordered the package opened had the requisite authority in military law to search without a warrant. *See* paragraph 152, Manual for Courts-Martial, United States, 1969 (Rev.). *See also United States v. Staggs*, 23 U.S.C.M.A. 111, 48 C.M.R. 672 (1974); *United States v. Sam*, 22 U.S.C.M.A. 124, 46 C.M.R. 124 (1973). Thus, in affirming the accused's conviction, we necessarily concluded that the search was both reasonable and properly authorized.

The situation presented in the case at bar differs materially from that sanctioned in *Torres.* Here, there has been no showing that the appellant's paper bag was unlawfully within the confines of the postal facility.[1] Nor is there evidence that either a portion or all of the postal facility was a secured area with access limited to employees and their inspected possessions.[2]

■ Even had a valid public interest justified an intrusion under the circumstances presented in this case, the absence of an authorization to search issued by one possessing the requisite authority was fatal.[3] *See v. Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). *See also Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). It is constitutionally impermissible to saddle noncommissioned officers not only with determining the necessity for inspections or searches but also with the responsibility for implementing appropriate inspection or search procedures. *See United States v. Ness,* 13 U.S.C.M.A. 18, 26, 32 C.M.R. 18, 26 (1962) (dissenting opinion); *cf. United States v. Drew,* 15 U.S.C.M.A. 449, 35 C.M.R. 421 (1965). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).[4] Those duties more appropriately fall upon individuals who have the requisite authority to initiate a search.

Inasmuch as the remaining evidence and appellant's subsequent admissions were obtained as a direct result of the initial unlawful search, those items of evidence also should have been excluded by the trial judge. *United States v. Moore,* 19 U.S.C.M.A. 586, 42 C.M.R. 188 (1970); *see Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). *See also Wong Sun v. United States,* 371

---

1. Sergeant Davis' testimony implies that the appellant's bag was lawfully within the mail terminal for he readily acknowledged that his office was utilized for the storage of personal items and, in addition, admitted that personnel other than the appellant routinely brought in sandwich bags. Thus, it was the appearance of the appellant's bag rather than its mere existence which triggered Sergeant Davis' concern.

2. While a directive from the regional commander urged local supervisors to insure "that a basically secure working environment exists," no evidence was presented to establish that the commander on the local level had formulated a systematic inspection procedure to implement the regional commander's directive. *See United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972).

3. In urging the contrary, the Government points to a letter from the regional commander of the postal service to his district postal supervisors entitled "Actions Required When Theft is Observed or Suspected." We do not view the letter as a delegation of authority to conduct searches or inspections. *United States v. Gebhart,* 10 U.S.C.M.A. 606, 28 C.M.R. 172 (1959). To the contrary, the letter instructs supervisors who observe or suspect an act of mail theft to "detain the individual and the evidence and contact the OSI immediately. . . . Do not question or search the individual. Leave that to the investigators."

The dissenting judge's reliance upon *United States v. Biswell, supra,* and *Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408

(1971), to support a warrantless inspection theory is similarly misplaced for, as Mr. Justice White made clear in *Biswell,* where "regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant *where specifically authorized by statute.*" *Id.,* 406 U.S. at 317, 92 S.Ct. at 1597 (emphasis added). Much the same view was expressed in *Wyman.* There the Supreme Court stressed that the warrantless inspection procedure was not utilized to ferret out criminal violations and was expressly authorized by New York statute and welfare regulations. No such statute or regulation was offered into evidence at trial in the present case. *United States v. Bethea,* 22 U.S. C.M.A. 223, 46 C.M.R. 223 (1973), nor was the purpose of Sergeant Davis' "inspection" purely administrative. *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), which is cited by the dissenting judge as authority for conducting a warrantless inspection without statutory authorization, actually deals with the scope of a search incident to a lawful arrest, a concept wholly different from that with which we are faced here. No one has urged nor does the record support the conclusion that the accused was under custodial arrest at the time his paper bag was "inspected."

4. To the extent that our decision in *United States v. Swanson,* 3 U.S.C.M.A. 671, 14 C.M.R. 89 (1954), is contrary to the views expressed herein, it is overruled and no longer represents the law of this Court.

U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Armstrong*, 22 U.S.C.M.A. 438, 47 C.M.R. 479 (1973); *United States v. Hundley*, 21 U.S.C.M.A. 320, 45 C.M.R. 94 (1972).

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is remanded to the Judge Advocate General of the Air Force for action not inconsistent with this opinion.

Senior Judge FERGUSON concurs.

COOK, Judge (dissenting):

I disagree with the majority opinion for two reasons.

First, in assessing the reasonableness of an intrusion by a Government official into the privacy of an individual, account must be taken of the governmental function that prompted the intrusion. Thus, in *United States v. Biswell*, 406 U.S. 311, 315, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), the Supreme Court upheld the right of the Government to search a storeroom on private premises, without a warrant or probable cause, because such search was "crucial" to the Government's regulation of a business licensed by it. *See also United States ex rel. Terraciano v. Montanye*, 493 F.2d 682 (2d Cir. 1974), *cert. denied*, 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974). Similarly, in *Wyman v. James*, 400 U.S. 309, 326, 91 S.Ct. 381, 390, 27 L.Ed.2d 408 (1971), the Court upheld the right of a Government caseworker to enter, despite objection, the home of the recipient of Government aid for dependent children, where the visit is for the purpose of checking on the use of program funds. The Court concluded that, although nonconsensual and warrantless, the entry serves "a valid and proper administrative purpose," and is "not an unwarranted invasion of personal privacy." *Id.* In the operation of the postal service, even sealed first-class mail, the delivery of which is protected against unreasonable delay by the Fourth Amendment, may be detained for a reasonable time. *United States v. Van Leeuwen*, 397 U.S. 249, 252, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). I would hardly suppose that one would seriously contend that an employee engaged in making currency of the United States could not be searched, as he left the mint at the end of his work tour, unless there was probable cause to believe he had stolen some of the money.

In protecting the mail within a postal facility, I believe the Government can inspect mail handlers and their personal effects without probable cause to believe the mail is in jeopardy. There may be limits to this right of inspection, but I do not believe those limits were exceeded in this case. *Cf. United States v. Johnson*, 425 F.2d 630 (9th Cir. 1970), *cert. dismissed*, 404 U.S. 802, 92 S.Ct. 38, 30 L.Ed.2d 35 (1971).

The second point of my disagreement with the majority is in regard to Davis' authority to act as he did. As shift supervisor, Sergeant Davis was accountable "for security of the mail." In my opinion, that accountability invested him with authority to take any action reasonably calculated to prevent unauthorized concealment or removal of the mail by mail handlers. A justifiable exercise of his responsibility does not, I believe, depend upon whether Davis was delegated power to search by a superior commander.[1]

Measured by the circumstances confronting him, what Sergeant Davis did was eminently reasonable. His office was the lunchroom for mail handlers. The office contained a coatrack, with a shelf on the top. The shelf was the "only place where personal items can be stored inside the office." Sometime between noon and 1:30 p. m., the accused entered the office carrying a large brown paper bag. The bag was open. The accused "pulled out" a sandwich and "started to eat." However, he was

---

1. My view of Sergeant Davis' specific authority in relation to mail matters within a postal facility distinguishes this case, in my opinion, from *United States v. Swanson*, 3 U.S.C.M.A. 671, 14 C.M.R. 89 (1954), in which this Court concluded that in exigent circumstances a first sergeant has lawful authority to order a police-type search. I, therefore, find it unnecessary to overrule *Swanson*, as the majority does in footnote 4 of its opinion.

called to the work area, so he took the bag with him and "laid it on the conveyor belt." As Davis passed the site, he noticed that the bag contained a "calendar or magazine," and another object which he did not identify. About 4:00 p. m., Sergeant Cohen called Davis' attention to a paper bag on the coatrack shelf. The bag "looked like it was full" and was sealed on the top with staples. From the outline of the contents on the bag surface, it appeared the bag contained a box.

According to Sergeant Davis, possession of a closed personal parcel by a mail handler constituted a violation of "some kind of rules," and anyone leaving the postal facility with such a package was "a security risk." No specific rule was cited by Davis, but Headquarters of the Air Force Postal and Courier Service had promulgated "specific procedures," intended to be implemented by local postal facilities, "to insure better security of the mail."[2] In *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Supreme Court held it was immaterial to the legality of a body search of an arrested person whether there was a departmental regulation or policy "establishing the conditions under which a full-scale body search should be conducted." *Id.* at 265, 94 S.Ct. at 491. Under the Court's rationale, it is, in my opinion, immaterial whether the Aero Mail Terminal implemented the headquarters guidelines if Sergeant Davis' intrusion into the sealed package was reasonable and lawful.

Davis had seen only one such paper bag in the mail facility; that bag was the one in the accused's possession. When Davis had seen it, the bag was open and contained a sandwich and a calendar, and, while Davis did not identify all the contents, his general description of them clearly excluded a box of a size and shape that would fill the bag. About 3 hours later, Davis saw a bag like that of the accused, filled with an object whose shape indicated it was a box, and the bag was stapled shut. Further, the evidence supports an inference that the only boxes on the postal premises of the size indicated were probably packages in the mail. Sergeant Davis unstapled the bag and looked in it. His reason was "[A]ny time anyone walks into work there where there is mail, with their bag open, and they walk out with the bag stapled, I'm going to ask to see it every time."

In my judgment, not only was Davis' conduct consistent with his responsibility as a supervisor of the mail facility, but it was an eminently reasonable act. What he did, therefore, did not constitute an unconstitutional intrusion in the accused's personal effects. Perhaps Davis should first have called upon the accused to open the bag, but "the existence of alternative approaches does not imply that what actually occurred was unreasonable." *United States v. Mason*, 173 U.S.App.D.C. 173, 523 F.2d 1122, 1126 (1975).

I would affirm the decision of the Court of Military Review.

---

2. In pertinent part, one paragraph of the instruction provides as follows:

> Postal clerks should not leave a postal facility with a package without authorization from his supervisor. No personal parcels such as *from the BX should be brought into a postal* handling facility.

Department of the Air Force, Headquarters USAF Postal & Courier Service (HQ COMD USAF), paragraph 2f (Mar. 2, 1973).

A recent change in the guidelines reads as follows:

> USAFPCS personnel will not carry briefcases, paper sacks containing personal items (purchases from base exchange, etc), luggage or other containers in which parcels may be concealed into or from mail processing work areas at any time.

Postal and Courier Service Manual 182–3, *United States Air Force*, paragraph 232(9) (Jan. 6, 1975).

I view the change as particularizing the kinds of packages that cannot be removed from a postal facility without authorization by a supervisor, as provided in the March 1973 letter of guidance.