UNITED STATES, Appellee

v

NORVAL J. MOORE, JR., Airman First Class, U. S. Air Force, Appellant

19 USCMA 586, 42 CMR 188

No. 22,792

July 31, 1970

*Colonel Bertram Jacobson* argued the cause for Appellant, Accused. With him on the brief was *Major Clarence E. Powell.*

*Lieutenant Colonel Robert W. Vayda* argued the cause for Appellee, United States. With him on the brief was *Colonel James M. Bumgarner.*

## Opinion of the Court

DARDEN, Judge:

A general court-martial convicted the appellant of wrongfully soliciting a Sergeant Lindsay to disobey a lawful general regulation by requesting the Sergeant in Thailand to obtain and transfer a quantity of amphetamine to the appellant, who was stationed in the United States. The issue in this case is one involving search and seizure.

On February 2, 1969, United States customs agents in Laredo, Texas, were summoned to the police station in Miguel Aleman, Mexico, by a Mexican immigration officer. There, they were allowed to examine a black jacket and a duffel bag containing forty pounds of marihuana. In the jacket were a set of keys and identification papers. From other information given them and from their own investigation, they learned that on the previous day a Negro male and a Caucasian male in a 1968 blue Camaro automobile bearing Kansas license plates S/W 6939 experienced car difficulties in Mier, Mexico. A hired wrecker took the car to a garage in Rio Grande City, Texas. Before the car crossed the border, however, the men removed a duffel bag and a suitcase. The Caucasian then accompanied the car into Texas, and his companion secured a hotel room in Miguel Aleman. After the car was left in the garage, the former returned to Mexico.

That night two men who had with them a duffel bag were surprised by a Mexican resident in a brushy area on the outskirts of Miguel Aleman. They

·dropped the bag and a black jacket and ran away. The two items of property were then taken to Mexican police headquarters. The jacket contained identification papers of Moore and his companion, as well as a key chain on which there were "dog tags" and a miniature Kansas license plate. The automobile that needed repair was later found to contain marihuana seed and fragments. Investigation disclosed that Moore was stationed at McConnell Air Force Base, Wichita, Kansas, and that at the time of these events he was on leave.

Customs officials furnished this information to the Office of Special Investigations detachment at Laredo Air Force Base, Texas. Agents there relayed the same information to the OSI detachment at McConnell Air Force Base with a request that Moore be interviewed and searched. On February 13, 1969, the base commander, after considering this same information, authorized a search of the appellant's person, his 1964 Ford sedan, and his barracks room for "[m]arihuana and any other illegal drugs and/or contraband."

A search of the appellant's barracks room produced an envelope addressed to Moore that showed Sergeant Lindsay's return address. The contents of the enclosed letter related to trafficking in marihuana, but neither the envelope nor the letter was ever introduced at the trial of this appellant. Lindsay was later interviewed in Thailand, however. He consented to a search of his quarters. Agents found an envelope addressed to the Sergeant that gave Moore's return address. The accompanying letter signed with Moore's known nickname informed Lindsay that if he could acquire amphetamine for a "penny a piece" a good deal of money could be made, because the market was large and the appellant had "a lot of connections to get rid of anything." Over defense objection, this envelope and this letter were offered into evidence as Prosecution Exhibits 1 and 2. After comparing the writing on these exhibits with other known specimens of the appellant's writing, a handwriting expert concluded that all were written by the same person. This informa-

**588**

tion constitutes the basis of the soliciting charge.

Appellate defense counsel argue that the search of Moore's barracks room was unlawful because it was not "authorized upon probable cause," that the seizure of Lindsay's letter from Moore's personal effects was unlawful, and that because Prosecution Exhibits 1 and 2 are the fruits of this unlawful search they cannot be introduced as evidence in this case. We agree.

Consideration of the scope of the authorization to search we leave to another time, since the record is plain that justification for the search of Moore's barracks room rested solely on the incidents at the Mexican border described above. The prosecution's case is devoid of information showing or even suggesting the presence of marihuana or similar contraband in the appellant's room at McConnell Air Force Base, Kansas. Suspicion alone will not support a finding of probable cause so as to permit a search of these quarters. Henry v United States, 361 US 98, 4 L Ed 2d 134, 80 S Ct 168 (1959). United States v Elwood, 19 USCMA 376, 41 CMR 376 (1970), is a comparable case. A search of Elwood's barracks property was authorized on the ground that he had been arrested in Killeen, Texas, in possession of what appeared to be marihuana. No evidence was offered to show that such contraband might be stored among Elwood's personal effects at Fort Hood, Texas. This Court therefore unanimously rejected the contention that the search was founded upon probable cause, saying:

"Unless we are prepared to hold that the mere fact of such arrest, standing alone, is sufficient evidence to believe that any person, arrested under these circumstances, would probably have additional contraband hidden among his belongings in the place where he lives, we must find that a search conducted on this basis is illegal and its fruits inadmissible in evidence. But we cannot so hold for, it is apparent that such a belief

is founded only on mere suspicion and a search authorized on the basis of suspicion alone is illegal." [19 USCMA, at page 378.]

We reach the same conclusion regarding the search of the appellant's room in this case, since no better showing of probable cause has been made here.

Prosecution Exhibits 1 and 2 would have been admissible, however, if there were a basis for their discovery that was independent of this unlawful search.

The exclusionary ruling applies to both indirect and direct products of such unlawful searches. ▮▮ Silverthorne Lumber Co. v United States, 251 US 385, 64 L Ed 319, 40 S Ct 182 (1920). One of the questions presented in Wong Sun v United States, 371 US 471, 488, 9 L Ed 2d 441, 83 S Ct 407 (1963), was:

". . . '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."

"Fruit of the poisoned tree" doctrine does not exclude the introduction of evidence obtained from an independent source. United States v Barrow, 363 F2d 62 (CA3d Cir) (1966), certiorari denied, 385 US 1001, 17 L Ed 2d 541, 87 S Ct 703 (1967).

In Wong Sun v United States, supra, Federal agents made an arrest and found narcotics in the suspect's possession. The proprietor of a laundry known as "Blackie Toy" was then implicated. Without an arrest warrant, agents went to the laundry, broke open the door that Toy had slammed shut, and arrested him in the bedroom of his living quarters. Toy, in turn, informed on a person named Yee. A search of his home produced narcotics. Yee later told agents that he had received drugs some four days earlier from Toy and Wong Sun. He directed agents to the latter's home, where an unproductive search was then made. Later the three were arraigned, charged with violating Federal narcotics laws. Toy and Wong Sun were tried together. The Supreme Court ruled that Toy's arrest was illegal and that his bedroom declarations were the inadmissible fruit of the agents' unlawful action.

". . . [V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." [371 US, at pages 485–486.]

For the same reason, narcotics taken from Yee should also have been excluded. The Government had not:

". . . [L]earned of the evidence 'from an independent source,' Silverthorne Co. v United States, 251 US 385, 392, 64 L Ed 319, 321, 40 S Ct 182, 24 ALR 1426; nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' Nardone v United States, 308 US 338, 341, 84 L Ed 307, 312, 60 S Ct 266." [371 US, at page 487.]

As to Wong Sun, however, the Court found the narcotics surrendered by Yee admissible because:

". . . The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial. Cf. Goldstein v United States, 316 US 114, 86 L Ed 1312, 62 S Ct 1000." [371 US, at page 492.]

The record in the instant case refutes any contention that OSI agents acquired knowledge of Prosecution Exhibits 1 and 2 ▮▮ through information derived from a source other than the

**589**

unwarranted search of Moore's barracks room. This evidence is not from an "independent source," and the relationship between the initial search and the subsequent discovery is not so "attenuated" as to eradicate the resulting taint. Under these circumstances, we hold Prosecution Exhibits 1 and 2 to be the inadmissible fruit of the unjustifiable search of Moore's quarters. Wong Sun v United States, supra. Accordingly, the decision of the United States Air Force Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

Forty pounds of marihuana were found in effects abandoned by the accused and his companions. It seems to me reasonable to conclude that the accused might have had additional marihuana on his person when he fled; if he did, it could be expected that he would have it on his person or in his quarters on the base. In my opinion, therefore, the authorization to search was supported by probable cause, not mere suspicion. The authorization did not allow the agents to rummage through the accused's private papers and read letters addressed to him (Woo Lai Chun v United States, 274 F2d 708 (CA9th Cir) (1960)), but they were entitled to use their eyes to note everything open to view. United States v Burnside, 15 USCMA 326, 35 CMR 298 (1965). On the evidence, the trial judge could reasonably have concluded that the lead to Sergeant Lindsay was obtained from his name and address on the envelope of a letter addressed to the accused. I would, therefore, sustain his ruling admitting in evidence the exhibits obtained from Lindsay.

One matter not within our grant requires consideration. The offense of which the accused was convicted was committed in August 1968. At that time, the maximum penalty for the offense of solicitation, the offense charged, was confinement at hard labor for four months. United States v Haveriland, 8 USCMA 621, 25 CMR 125 (1958); United States v Walker, 8 USCMA 38, 23 CMR 262 (1957); United States v Oakley, 7 USCMA 733, 23 CMR 197 (1957). The 1969 Manual, which was in effect at the time of trial, however, increased the punishment for solicitation, Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 127c, Table of Maximum Punishments, page 25–17. In apparent reliance on the 1969 Manual, the law officer instructed the court members that the punishment extended to a dishonorable discharge and confinement at hard labor for two years, and the court imposed a dishonorable discharge, confinement at hard labor for twelve months, and accessory punishments. The sentence, therefore, exceeds the legal maximum. See United States v Griffin, 19 USCMA 348, 41 CMR 348 (1970). Accordingly, I would set aside the decision of the United States Air Force Court of Military Review as to the sentence and return the record of trial to it for reassessment of the sentence.