UNITED STATES, Appellee

v

RALPH H. NAZARIAN, Airman, U. S. Air Force, Appellant

No. 28,509

March 21, 1975

*Major William H. Seckinger* argued the cause for Appellant, Accused. With him on the brief were *Colonel William E. Cordingly, Lieutenant Colonel James LaBar,* and *Captain Byron D. Baur.*

*Colonel C. F. Bennett* argued the cause for Appellee, United States.

## OPINION OF THE COURT

Cook, Judge:

Although the defendant pleaded not guilty to four specifications of larceny and wrongful appropriation, he was convicted of two of the larceny offenses, both of which involved the taking of automobile parts or equipment. For these offenses, he was sentenced to a bad-conduct discharge, confinement at hard labor for 7 months, and reduction to airman basic. The findings and sentence have been approved and affirmed by intermediate reviewing authorities, but the discharge was suspended by a supplementary order dated March 14, 1974, with a provision for automatic remission.

The two larcenies were shown to have occurred on September 6, 1972, and April 24, 1973, respectively. Incident to proving the two offenses, one Airman Meisner, an apparent accomplice in the first larceny, testified about the circumstances surrounding the necessary asportation of the stolen property. Meisner's sole testimony regarding the second larceny was limited to repeating an off-hand remark the accused had made which amounted to an incriminating admission. Defense counsel did make timely objection to the admission of Airman Meisner's testimony on the grounds it was the product of an illegal search and seizure that had been made on September 12, 1972, at an off-base apartment or premises occupied by the accused and Airman Meisner. The military judge, however, while initially recognizing that "[i]dentity of a witness growing out of an illegal search can poison the testimony of the witness" and, seemingly inclined at first "to pursue the legality of the search," overruled the objection after hearing arguments by counsel. In so ruling and without the presentation or consideration of any evidence touching on the legality of the search, he stated:

> In resolving the objection before the court I have examined United States v Foecking [22 USCMA 46], 46 CMR 46, and agree with the prosecution that it stands for the proposition that the interrogation and obtaining of a statement from an individual is not precluded by virtue of a possible earlier

illegal search of his premises; but more important to the issues, as no Military Courts have to my knowledge ruled on the specific points involved, is looking to federal decisions in the area. The basic proposition that I was interested in was ruled in United States v Tane, 329 F2d 848, that the testimony of a witness can be and should be excluded where his identity was learned solely as a result of an illegal search and seizure. However, later cases, including United States v Evans [454 F2d 813 (8th Cir. 1972)], decided by the 8th Circuit on the 13th of January 1972, and found in 10 Criminal Law Reports [sic] 2388, stated that "cases which do not exclude the live testimony of a witness generally involve situations where the illegality did not directly result in learning the name of the informant used as the witness at the trial or where there were substantial attenuating circumstances or an independent source." The court goes on to state, "Each case must be examined on an ad hoc basis and must be ruled on its own facts rather than any sweeping general concept of live testimony as such." I gather the situation is that on the basis of a suspicion, if not probable cause which would cause an illegal search, the room or house of Meisner and Nazarian was searched and the prosecution is now attempting to use the testimony of Meisner, but the court can see more merit in the contention of the defense if in the search of Meisner and Nazarian a paper was found illegally that showed an Airman Smith knew something about it and the only way Smith's name came into the picture was through a search of Meisner and Nazarian's premises. Here we are dealing with Meisner, one of the two people that occupied the room that was searched. The court cannot see under that circumstance where the knowledge to the investigators of the existence of an Airman Meisner, who may have relevant testimony, was known only through an illegal search. On that basis the court will overrule the objection of the defense and allow the testimony of Airman Meisner at this proceeding.

It is this ruling, made under these circumstances, that is now the basis for the question to be decided, *viz:*

WHETHER THE ACCUSED WAS PREJUDICED AS TO THE FINDINGS OF GUILTY OF BOTH CHARGES AND BOTH SPECIFICATIONS BY THE ADMISSION INTO EVIDENCE OF THE TESTIMONY OF AIRMAN DONALD MEISNER OVER THE OBJECTION THAT MEISNER'S TESTIMONY WAS THE RESULT OF THE EXPLOITATION OF AN ILLEGAL SEARCH.

■ This Court has long recognized as established in military law that an accused is entitled to the protections afforded by the Fourth Amendment against illegal searches and seizures and, upon timely objection, the Government has the burden of establishing legality when it seeks to introduce into evidence the results of a search. *United States v Berry,* 6 USCMA 609, 20 CMR 325 (1956); *United States v Doyle,* 1 USCMA 545, 4 CMR 137 (1952). Consequently, a search not shown to be legal renders the evidence which it produces inadmissible when objection is made. This exclusionary rule applies to evidence directly obtained during a search and, in addition, any evidence derived from such a search is equally excludable. *United States v Moore,* 19 USCMA 586, 42 CMR 188 (1970). More recently, this Court ruled that the testimony of a witness whose identity was discovered as a result of an illegal search is likewise inadmissible. *United States v Armstrong,* 22 USCMA 438, 47 CMR 479 (1973).

It cannot be disputed, however, that "each case must be examined on an ad hoc basis and must be ruled on its own facts rather than on any sweeping general concept of 'live testimony' as such," as was noted by the military judge and stated in *United States v Evans,* 454 F2d 813, 818 (8th Cir. 1972), cited by him. This truism, nevertheless, neither sustains nor supports the action of the military judge and, indeed, supplies the answer to his own dilemma as well as to the question presented by his ruling.

As indicated by the military judge, the identity of Airman Meisner was probably known prior to the inception of the search to which objection was made.

Moreover, this factor, if it had been the only basis for the objection, might have warranted the ruling made by the military judge. However, in *United States v Tane,* 329 F2d 848 (2nd Cir. 1964), also cited by the military judge, the court had occasion to consider a similar question relating to the testimony of a witness in light of the poisonous tree doctrine. Not only did the court refer to the identity of the witness, but it also made reference to the question of the willingness of the witness to testify. After noting that the "proffer of a living witness should not be 'mechanically equated with the proffer of inanimate evidentiary objects illegally seized,'" the court ruled:[1]

[T]he government has failed to carry its burden of showing that the information gained from the wiretap did not lead, directly or indirectly, to the discovery of Pase and to Pase's willingness to testify. See United States v Coplon, 185 F2d 629, 636, 28 ALR2d 1041 (2 Cir. 1950). Indeed, the record demonstrates that the identity of Pase and knowledge of his implication in unlawful payments was derived from the wiretap, and that Pase was unwilling to testify or even admit to making any unlawful payments until he was told by the Assistant District Attorney that the December 6 conversation between his attorney and union officials had been tapped. The road from the tap to the testimony may be long, but it is straight.

■ From the foregoing, therefore, it is clear that not only is the identity of a witness a proper subject for consideration when determining the effects of a search charged to be illegal, but also the leverage effect of the search on the "willingness" of the witness to testify must be gauged, when appropriate.

With this in mind, and as indicated previously, the solution to the issue can be found in the very language from the *Evans* case which was quoted by the military judge when he made his ruling. As stated, each case must be examined on an ad hoc basis and, which is equally important, "must be ruled on its *own*

---

[1] 329 F2d at 853.

*facts* rather than any sweeping general concept of 'live testimony' as such."[2] Here, the failure of the military judge to require the Government to present the facts surrounding the search, however, precluded a development that could have allowed an informed resolution of the defense objection, as well as a determination of any possible taint that might have resulted if the search were found to be illegal. Moreover, *McLindon v United States,* 329 F2d 238 (D.C. Cir. 1964), involved a comparable situation even if it appeared to concern only the identity of witnesses. Upon remanding the case to the lower court for a hearing, the court succinctly expressed our views in the present case by stating:[3]

> The difficulty in the present case is that we do not know enough of the facts to reconstruct the connection, if any, between the materials found in the Oldsmobile and the testimony of the three witnesses at the trial. The Government has not shown whether it derived its knowledge of the witnesses directly from the materials (which of course are not before us), or whether it found or would have found these witnesses through independent sources or sources so remote from the original illegality that the attentuation rule should apply. Nor do we know how significant merely locating the witnesses was in leading to their testimony at trial.

■ Because of these deficiencies in the record, the ruling of the military judge lacks an adequate basis to sustain it. As a result, he erred in overruling the defense objection and holding that the testimony of Airman Meisner was admissible. However, it is equally uncertain that this testimony was inadmissible. Therefore, it is appropriate that this question be fully litigated at a rehearing which may be had with regard to the findings of guilty under the original Charge.

■ As to the second finding under the Additional Charge, however, further action is not necessary. Assuming, without deciding, that Meisner's testimony was the tainted product of an illegal search, further proceedings are not warranted in this instance. As pointed out hereinbefore when briefly recounting his testimony about this offense, it only extended to a volunteered statement by accused which was, at most, an incriminating admission. An examination of the record, however, reflects that the evidence of accused's guilt of larceny on the second offense was otherwise overwhelming, and it can be stated without fear of contradiction, his statement to Meisner presented no fair risk of prejudice. *United States v Walters,* 22 USCMA 516, 48 CMR 1 (1973).

In light of the foregoing, therefore, the decision of the Court of Military Review as to specification 1 of the Charge and the sentence is reversed and the record of trial is returned to the Judge Advocate General of the Air Force. The Court of Military Review may reassess the sentence on the basis of the finding of guilty under specification 2 of the Additional Charge or order a rehearing of specification 1 of the Charge and of the penalty.

Senior Judge FERGUSON concurs.

Judge QUINN did not participate in the decision of this case.

---

[2] 454 F2d at 818 (emphasis added).

[3] 329 F2d at 241.