UNITED STATES

v.

Sergeant Clayton C. CARTER, FR 412–92–2874, Detachment 13, United States Postal and Courier Service, Thirteenth Air Force (PACAF).

ACM 21683 (f. rev.).

U. S. Air Force Court of Military Review.

Sentence Adjudged 1 April 1974.

Decided 1 April 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major John A. Cutts III.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

DECISION UPON FURTHER REVIEW

LeTARTE, Chief Judge:

In our original decision in this case, we affirmed findings of guilty of violating a lawful general regulation (Specification 1, Charge I) and five specifications of stealing mail matter (Specifications 1, 3, 5, 6 and 7, Charge II), in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934. *United States v. Carter*, 49 C.M.R. 636 (A.F.C.M.R.1974). We also affirmed so much of the approved sentence

as provided for bad conduct discharge, confinement at hard labor for 10 months, forfeiture of $100.00 per month for 10 months and reduction in grade to airman basic.

After granting the accused's petition for review, the Court of Military Appeals found that "the remaining evidence and [the accused's] subsequent admissions" had been obtained as the direct result of an unlawful search. *United States v. Carter*, 1 M.J. 318 (20 February 1976). Accordingly, the Court reversed our decision and remanded the record of trial to The Judge Advocate General "for action not inconsistent with" its opinion.[1]

Appellate defense counsel have submitted an assignment of error and brief in which they argue that the charges should be dismissed. Since there is no untainted evidence available to prove the mail matter theft allegations, we will dismiss those charges. Article 66(d), Code, supra. However, we find that the evidence of record is sufficient to establish the accused's guilt of the lawful general regulation violation, beyond any reasonable doubt.[2] Specifically, we are of the opinion that the accused's confession of guilt respecting this offense was not induced by the results of the unlawful search. *United States v. Waller*, 11 U.S.C.M.A. 295, 29 C.M.R. 111 (1960).

Following the unauthorized opening of a paper bag belonging to the accused and containing stolen mail matter, the accused was interviewed by Special Agent William Wood, Office of Special Investigations (OSI). Agent Wood properly apprised the accused of his pertinent rights against self-incrimination and to counsel and advised the accused that he was investigating the "alleged offense of theft from the U.S. mail." While being questioned as to what other property he had stolen from the mail, the accused spontaneously disclosed that he had also unlawfully disposed of exchange rationed items to persons not authorized exchange privileges. Agent Wood described the circumstances of this disclosure as follows:

> We were not too far into the interview when [the accused] mentioned that he had disposed of some AAFEX items and he had disposed of some beer and soda by either selling it or giving it to local nationals. I asked him if I could see his cards, specifically his commissary permit, his Exchange ration card and his Embassy shop card. He produced them. I noticed that he had purchased a lot of these items . . . When he indicated that he had disposed, perhaps illegally, of some of these items, I told him that I was stopping the interview at that time because I wanted to expand the explanation of his rights and the nature of the offense under investigation . . . to include his possible illegal disposal of commissary and AAFEX items.

Subsequently, the accused confessed that he had rented an "ice box" from a "Mr. Fan" for "two cases of beer per month."[3] It is the accused's confession to this crime with which we are here concerned, for if it, too, were contaminated by the unlawful search,

1. The Court's reason for remanding the case in this manner is not readily ascertainable. If the Court were of the opinion that substitute evidence is not available, it would have set aside the findings and sentence and dismissed the charges. *United States v. Vasquez*, 22 U.S.C.M.A. 492, 47 C.M.R. 793 (1973); Article 67(e), Code, supra. On the other hand, if the Court were uncertain as to whether such evidence is available, it would have set aside the findings and sentence and ordered a rehearing. *United States v. Castro*, 23 U.S.C.M.A. 166, 48 C.M.R. 782 (1974); Article 67(e), Code, supra. Therefore, in the absence of a clear order from the Court, we presume it intended that The Judge Advocate General return the case to us for further review. Article 67(f), Code, supra.

2. The pertinent regulatory provision prohibits using "duty free import items of merchandise as payment for personal services, rental, or other household expenses to persons of the local economy not entitled to duty free privileges." The specification in issue alleges that the accused violated the regulation "by using duty free import items, to wit: beer, as payment for rental on household expenses to persons of the local economy not entitled to duty free privileges."

3. At trial, Mr. Fan, Kuang Chien testified that on one occasion, the accused had given him two cases of beer in payment of the rental on a refrigerator.

then it cannot be considered as evidence against the accused.[4] *United States v. Peurifoy,* 22 U.S.C.M.A. 549, 48 C.M.R. 34 (1973); *United States v. Moore,* 19 U.S.C.M.A. 586, 42 C.M.R. 188 (1970).

As has oftentimes been noted, the rule excluding evidence derived from an unlawful search had its genesis in two Supreme Court decisions: *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), and *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Silverthorne* held that evidence obtained as a direct or indirect result of an unlawful search could not be used before a court unless knowledge of the facts thus obtained was gained from an "independent source." In *Wong Sun,* the Court formulated the rule in the following manner:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

371 U.S. 487, 488, 83 S.Ct. 417. See Manual for Courts-Martial, 1969 (Rev.), paragraph 152.

■ The mere fact that an illegal act preceded the procurement of evidence does not necessarily render that evidence inadmissible. *United States v. Foecking,* 22 U.S.C.M.A. 46, 46 C.M.R. 46 (1972). There are other factors that must be considered. These include, as indicated in *Wong Sun,* whether the evidence was gained through exploitation of the illegality rather than by untainted means, or, as indicated in *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939), whether the connection between the illegality and the challenged evidence has "become so attenuated as to dissipate the taint."

■ It follows, therefore, that to render a confession inadmissible on the basis that it resulted from an illegal search, there must have been a causal connection between the leads derived from the search and the specific crimes admitted by the accused. See, *United States v. Dutcher,* 7 U.S.C.M.A. 439, 22 C.M.R. 229, 234 (1956); *United States v. DeLeo,* 5 U.S.C.M.A. 148, 17 C.M.R. 148, fn. 4 (1954). Correspondingly, the knowledge gained from the illegal search must have been the motivating factor behind the accused's decision to confess. *United States v. Waller,* 11 U.S.C.M.A. 295, 29 C.M.R. 111 (1960); see, *United States v. Block,* 18 C.M.R. 785 (A.F.B.R.1955), pet. denied, 5 U.S.C.M.A. 861, 18 C.M.R. 333 (1955).

■ Here, had the accused not been subjected to questioning following the unlawful search, he would not have confessed to any offense. In that sense, his blackmarketing admissions were induced by the illegal search results. However, the fact that the accused's crime might not otherwise have "come to light" is not a legal basis for excluding the entire confession. *Wong Sun v. United States,* supra. It is significant that Agent Wood did not suspect the accused of blackmarketing activities when he initiated the interrogation. That information was revealed by the accused of his own volition, without the slightest prompting on Wood's part. In fact, as has been shown, Wood was so surprised by the disclosure that he deemed it appropriate to readvise the accused of his rights before proceeding.

---

4. Despite language in its opinion seemingly indicating that the confession was inadmissible in its entirety, the Court of Military Appeals did not directly discuss the legal effect of the unlawful search with respect to the accused's admitted blackmarketing activities. As mentioned above, however, had the Court found the confession completely inadmissible, it would have dismissed the charge since the evidence of the crime and of Mr. Fan's identity was derived from the confession and no independent source of this information is available to the Government. *United States v. Crow,* 19 U.S.C.M.A. 384, 41 C.M.R. 384 (1970); *United States v. Penman,* 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966).

Consequently, it is evidence that Wood's knowledge of the offense in issue was not gained from the illegal search or through exploitation of any leads derived therefrom.

Furthermore, the accused's confession to the regulative violation was so inconsistent with the matter under investigation as to refute any claim that this part of his confession was induced by the search results. See *United States v. Plaut,* 18 U.S.C.M.A. 265, 39 C.M.R. 265 (1969); *United States v. Workman,* 15 U.S.C.M.A. 228, 35 C.M.R. 200 (1965). The illegally obtained knowledge that the accused had stolen mail matter simply was not of the type to produce the accused's confession to blackmarketing activities. Cf. *United States v. Hundley,* 21 U.S.C.M.A. 320, 45 C.M.R. 94, 99 (1972); *United States v. Bennett,* 7 U.S.C.M.A. 97, 21 C.M.R. 223 (1956).

Apparently it was the accused's overriding sense of guilt that impelled him to divulge crimes of which he was not suspected. For this reason, it would be a travesty of justice to hold that the accused's confession was involuntary, insofar as it related to the regulatory violation offense, when the principal motivating factor was his conscience, rather than the illegal search. Paraphrasing the Court's opinion in *United States v. Friedland,* 441 F.2d 855, 861 (2d Cir. 1971), cert. denied, 404 U.S. 867, 92 S.Ct. 143, 30 L.Ed.2d 111 (1971), to hold that the accused was immunized from prosecution for crimes spontaneously admitted by him under the present circumstances "would stretch the exclusionary rule beyond all tolerable bounds."

■ Left for us to determine is an appropriate sentence for the single offense herein affirmed. The accused's punitive discharge has already been remitted, and appellate defense counsel have advised us that the accused served eight months of the adjudged confinement. In view of these circumstances, so much of the sentence as is in excess of forfeiture of $100.00 per month for two months and reduction to the grade of airman first class is hereby set aside.

Accordingly, the findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

FORAY, Judge, concurs.

EARLY, Judge, not participating.